IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| BUNKERS INTERNATIONAL CORPORATION, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:11cv803 LMB/IDD |
| CARREIRA PITTI, P.C., | ) ) ) |
| Defendant, | ) ) |
| -and- | ) ) |
| TLDS, LLC, | ) ) |
| Garnishee. | ) |

**BRIEF IN SUPPORT OF**
**GARNISHEE'S MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

The Plaintiff, Bunkers International Corporation ("Bunkers"), brought this action as the result of an alleged breach of contract by Carreira Pitti, P.C. ("Carreira Pitti"), a Panamanian law firm. Count I of the Complaint seeks damages against Carreira Pitti. Count II, however, purports to be a claim for Maritime Attachment and Garnishment under Supplemental Rule B, in which Bunkers seeks to attach what it refers to as "intangible property within this District; to wit, [Carreira Pitti's] website – http://www.carreira pitti.com/ – which is registered with TLDS."

There is no genuine issue of material fact that Bunkers' attempt to attach or garnish Carreira Pitti's "website" from TLDS must fail. First, TLDS has no involvement with, and does not host, Carreira Pitti's website. Second, to the extent Bunkers intended

to attempt to attach or garnish the domain name registration for <carreirapitti.com>, Carreira Pitti is not the registrant of the domain name. And third, even if Carreira Pitti was the registrant of the domain name <carreirapitti.com>, a domain name cannot be attached or garnished as a matter of law. Therefore, TLDS's motion for summary judgment should be granted.

## II. UNDISPUTED FACTS

1. Bunkers is a corporation with its principal place of business in Lake Mary, Florida. Bunkers provides physical supply, trading, and brokering services to marine customers around the world. Compl. ¶ 3.

2. Carreira Pitti is a law firm with its sole offices in Panama City, Panama. Compl. ¶ 4.

3. TLDS, L.L.C., d/b/a SRSPlus, LLC ("TLDS") is a domain name registrar with its principal place of business in Herndon, Virginia. Compl. ¶ 5.

4. On or about May 27, 2010, Bunkers provided marine oil (bunkers) to the M/V OCEAN BLUE 1 at Maracaibo, Venezuela, on the order of Carreira Pitti. Compl. ¶ 7.

5. Bunkers issued its invoice in the amount of $34,245.54, on June 15, 2010 with payment terms that the invoice was due on receipt. Compl. ¶ 11.

6. Carreira Pitti failed to pay the amount owed on the due date. Compl. ¶ 13.

7. Invoking Supplemental Rule B, Bunkers sought and obtained a process of Maritime Garnishment. Docket No. 9.

8. According to Count II of the Verified Complaint filed herein (Docket No. 1), Bunkers seeks to attach or garnish what it refers to as "intangible property within this

2229444_2

District; to wit, [Carreira Pitti's] website – http://www.carreira pitti.com/ – which is registered with TLDS." Compl. ¶ 19.

9. A domain name is not the same as a website. A website is a "place" on the World Wide Web that is comprised of files, or "content," often of a mixed text, graphic and dynamic nature and often permitting user interaction. The website's content is stored or "hosted" on a specific computer connected to the Internet, which like all computers, has been assigned an IP number as its Internet address. Declaration of Natalie Sterling (Sterling Decl.) ¶ 6, attached hereto as Exhibit 1.

10. A domain name, on the other hand, is an alpha-numeric string of characters that corresponds with a particular IP address, providing Internet users with the ability to utilize easily-remembered domain names rather than trying to remember the numerically-based IP addresses. A registrant may register a domain name by selecting an available, unique domain name and entering into a commercial contract with a registrar to associate that domain name with an IP address. Sterling Decl. ¶¶ 4, 5.

11. Every registrant of a domain name through TLDS must enter into Network Solutions' standard Service Agreement. A copy of the current version of the Service Agreement is attached the Declaration of Natalie Sterling as *Exhibit A*. Sterling Decl. ¶ 9.

12. The registrant of the domain name <carreirapitti.com> is Cable Onda S.A. TLDS's records reflect that Cable Onda S.A. first registered the domain name <carreirapitti.com> with TLDS on December 21, 2004 (the "Registration Date"), and the domain name has remained registered by Cable Onda S.A. at all times since that date. Sterling Decl. ¶ 10, Ex. B.

3

2229444_2

13. Carreira Pitti, P.C. is not the registrant of the domain name <carreirapitti.com>, and at no time since the Registration Date has Carreira Pitti, P.C. been the registrant of <carreirapitti.com>. Sterling Decl. ¶ 11.

14. TLDS does not provide hosting or other services with respect to the website located at <carreirapitti.com>. Sterling Decl. ¶ 12.

15. TLDS is not indebted to Carreira Pitti, P.C., nor does TLDS otherwise have in its possession, custody or control any tangible or intangible property belonging to Carreira Pitti, P.C. Sterling Decl. ¶ 13.

## III. ARGUMENT

### A. Standard of Review.

Summary judgment is appropriate where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). While the Court must view the record in the light most favorable to the nonmoving party, Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002), "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008).

Moreover, "the mere existence of *some* alleged factual dispute" cannot defeat a motion for summary judgment; the dispute must be both "material" and "genuine," meaning that it must be capable of changing the outcome of the lawsuit. Bryant, 288

F.3d at 132. Accordingly, a nonmoving party cannot "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F .2d 213, 214 (4th Cir. 1985). Rather, to survive a motion for summary judgment, a nonmoving party who bears the burden of proof at trial must submit sufficient, credible evidence to establish a reasonable finding in his favor as to each essential element of his claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

Applying this standard, it is clear that summary judgment should be entered in TLDS's favor.

### B. TLDS Holds no Garnishable Property of Carreira Pitti.

Supplemental Rule B permits attachment of "the defendant's tangible or intangible personal property." Fed. R. Civ. P. Supp. R. B(1)(a). "From a plain reading of the text, it is clear that to attach [something] under Rule B, the [thing] must both (1) be 'tangible or intangible property' and (2) be the 'defendant's.'" Shipping Corp of India Ltd. v. Jaldhi Overseas Pte. Ltd., 585 F.3d 58, 66 (2d Cir. 2009). Assuming – incorrectly, as demonstrated in Section III.C below – that a website or domain name is "tangible or intangible property that may be the subject of a garnishment, TLDS simply does not have anything belonging or owed to Carreira Pitti. TLDS does not we any debts to Carreira Pitti; it does not have in its possession, custody or control any property to which Carreira Pitti holds legal title; nor does TLDS hold any property for Carreira Pitti as fiduciary. Sterling Decl. ¶ 13. The only thing Bunkers specifically seeks to attach or garnish – the website located at http://www.carreirapitti.com/ – is not in the possession custody or control of TLDS.

The undisputed facts demonstrate that a website is merely a "place" on the World Wide Web that is comprised of files, or "content," often of a mixed text, graphic and dynamic nature and often permitting user interaction. Sterling Decl. ¶ 6. The website's content is stored or "hosted" on a specific computer connected to the Internet. Id. TLDS does not provide hosting or other services with respect to the website located at <carreirapitti.com>. Sterling Decl. ¶ 12. Put another way, even if the files or content associated with the website located at <carreirapitti.com> were garnishable (and they are not), TLDS does not have those files.

To the extent that Bunkers intended – albeit misguidedly – to seek to garnish the domain name <carreirapitti.com>, the same answer obtains. Carreira Pitti is not the registrant of <carreirapitti.com>. Sterling Decl. ¶¶ 10, 11. An entity called Cable Onda S.A. is. Sterling Decl. ¶ 10. Carreira Pitti is not a party to the Service Agreement relating to <carreirapitti.com>. Therefore, even were a domain name garnishable – which it is not – the domain name <carreirapitti.com> would be garnishable only as to Cable Onda S.A. as the defendant.

    C.    <u>A Domain Name May Not be the Subject of a Garnishment or Attachment.</u>

Even if it is assumed – incorrectly – that TLDS "possesses" the website located at <carreirapitti.com> or that Carreira Pitti is the registrant of the domain name <carreirapitti.com>, Bunkers' attempt to effect a garnishment fails. Supplemental Rule B permits attachment only of the defendant's tangible or intangible personal property. See <u>Jaldhi</u>, 585 F.3d at 70; <u>Scanscot Shipping Svcs. GMBH v. Metales Tracomex Ltda.</u>, 617 F.3d 679, 681 (2d Cir. 2010).

"As a remedy *quasi in rem,* the validity of a Rule B attachment depends entirely on the determination that the *res* at issue is the property of the defendant at the moment the *res* is attached." Jaldhi, 585 F.3d at 69 (citing Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V., 572 F.3d 96, 108 (2d Cir. 2009)). "Because a requirement of Rule B attachments is that the defendant is not 'found within the district,' the *res* is the only means by which a court can obtain jurisdiction over the defendant. If the *res* is not the property of the defendant, then the court lacks jurisdiction." Id. As described in Section III.B. above, the domain name <carreirapitti.com> is not registered by Carreira Pitti, and therefore even if it were property, it is not the "property of the defendant." This Court therefore lacks jurisdiction.

Nevertheless, the Court need not even delve into that issue. In determining whether a *res* is "property" subject to maritime attachment, when there is no substantial federal maritime law to guide the decision, the Court must look to state law to determine whether property rights exist. See id. at 70; Reibor Int'l Ltd. v. Cargo Carriers Ltd., 759 F.2d 262, 266 (2d Cir. 1985) (citing California ex rel. State Lands Comm'n v. United States, 457 U.S. 273, 283 (1982)) (considering state law where federal admiralty law is "thin" and "a decision ... contrary to the general rule of the state might have disruptive consequences for the state banking system" (internal quotation marks omitted)). See also, Scanscot, 617 F.3d at 681 (federal courts must look to state law to determine whether EFTs can be considered a defendant's property under Rule B). There is no federal maritime law known to TLDS which in any way addresses the propriety of a garnishment of a domain name registration. Therefore, this Court must look to state law.

The applicable law in Virginia and, indeed, in this Court, is clear. In <u>Network Solutions, Inc. v. Umbro Int'l, Inc.</u>, 259 Va. 759, 529 S.E.2d 80 (2000), the Supreme Court of Virginia tackled head-on whether a domain name registration may be the subject of a garnishment proceeding. The Court held that it is not:

> Irrespective of how a domain name is classified, we agree with Umbro that a domain name registrant acquires the contractual right to use a unique domain name for a specified period of time. However, that contractual right is inextricably bound to the domain name services that NSI provides. In other words, whatever contractual rights the judgment debtor has in the domain names at issue in this appeal, those rights do not exist separate and apart from NSI's services that make the domain names operational Internet addresses. Therefore, we conclude that a domain name registration is the product of a contract for services between the registrar and registrant.

259 Va. at 770, 529 S.E.2d at 86 (citing <u>Dorer v. Arel</u>, 60 F. Supp. 2d 558 (E.D. Va. 1999)). A contract for services cannot be garnished. Therefore, the court held that a domain name registration cannot be the subject of a garnishment. <u>Id.</u> The <u>Umbro</u> court continued:

> If we allow the garnishment of NSI's services in this case because those services create a contractual right to use a domain name, we believe that practically any service would be garnishable. For example, if a satellite television customer prepaid the fee for a particular channel subscription, Umbro's position would allow garnishment of the subscription service. We also are concerned that a decision to uphold the garnishment at issue would be opening the door to garnishment of corporate names by serving a garnishment summons on the State Corporation Commission since the Commission registers corporate names and, in doing so, does not allow the use of indistinguishable corporate names . . . .

259 Va. at 770-71, 529 S.E.2d at 86-87 (internal citations omitted).

8

2229444_2

Put another way, a domain name does not come into existence until there is a registration services agreement between the registrar and registrant. A domain name ceases to exist when the registration agreement terminates or otherwise so provides. A domain name registration has none of the usual attributes of property – it is solely the product of the registration services agreement. More specifically, it is the registrar's agreement to associate an alphanumeric character string with a particular IP address so as to allow one to point to a particular "location" on the Internet. A domain name is merely the pointer itself, owned by no one and used only to invoke the registrar's services for which the registrant has paid. It is no more a piece of property than any other collection of letters and numbers.

Furthermore, in a precursor to Umbro, this Court noted that "a domain name registration is the product of a contract for services between the registrar and registrant," Dorer, 60 F. Supp. 2d at 561, and, therefore:

> [a]s a practical matter, it is difficult to see in the case of a domain name precisely what the executing official would seize—or what steps an executing official would take to compel the registering authority, in this case NSI, to cancel a domain name or to transfer one from one party to another. By contrast, in the case of intangible personal property such as stock, the executing official could seize the actual certificate if it were in the possession or control of the judgment debtor, or garnish the third-party account in which it is held, and then dispose of the property by judicial sale.

Id. at 559, n.8.

Lastly, and underscoring why a domain name registration cannot be the subject of a garnishment, a garnishment would have the effect of requiring TLDS to transfer the domain name registration into the name of a third party – effectively requiring that TLDS

enter into contractual relations with Bunkers. However, there exists no basis for doing so. The Service Agreement is non-assignable. See Sterling Decl., Ex. B, at § 20 (". . . your rights under this Agreement are not assignable or transferable."). Moreover, domain name registration agreements are contracts for personal services. See Umbro, 259 Va. at 770-71, 529 S.E.2d at 86. Such agreements are not assignable. See, e.g., Reynolds & Reynolds Co. v. Hardee, 932 F. Supp. 149, 153 (E.D. Va. 1996); McGuire v. Brown, Guardian, 114 Va. 235, 242, 76 S.E. 295, 297 (1912).

Therefore, any order attaching or garnishing a domain name registration would necessarily purport to require TLDS to transfer the registration from the current registrant to someone else. It is contractually impermissible and legally improper for the Court to force TLDS to enter into contractual relations with the some person or entity with whom it may not care to do business. Such an order violates both the law governing assignability and the express non-assignment clause in the Service Agreement. This would be an impermissible form of judicial conscription. TLDS cannot, and should not, be forced to contract with any person or entity with whom it may choose not to contract. To permit the garnishment or attachment of a domain name would force TLDS to do so.

## IV. CONCLUSION

There is no genuine issue of material fact. TLDS has no involvement with, and does not host, Carreira Pitti's website. Carreira Pitti is not the registrant of the domain name <carreirapitti.com>. And in no event can a domain name be the subject of an attachment or garnishment. Therefore, TLDS's motion for summary judgment should be granted.

                                                                              /s/

                                      Timothy B. Hyland
                                      Virginia State Bar No. 31163
                                      Attorney for TLDS, L.L.C.
                                      STEIN SPERLING BENNETT
                                         DE JONG DRISCOLL PC
                                      25 West Middle Lane
                                      Rockville, Maryland  20850
                                      Tel: (301) 838-3314
                                      Fax: (301) 354-8314
                                      thyland@steinsperling.com

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, and that service will thereby be accomplished on:

    Timothy P. Bosson, Esquire
    Simms Showers LLP
    305 Harrison Street, S.E.
    Leesburg, Virginia 20175

    *Counsel for Bunkers International Corporation*

And I hereby certify that on the 25th day of October, 2011, I will email and mail a copy of the document and a copy of the NEF by U.S. mail to the following non-filing user:

    Carreira Pitti, P.C.
    55 St. No. 255 Carpit Buildings, El Cangrejo
    P.O. Box 0819-0068 El Dorado
    Panama, Republic of Panama
    info@carreirapitti.com

    *Defendant*

    /s/
    Timothy B. Hyland
    Virginia State Bar No. 31163
    Attorney for TLDS, L.L.C.
    STEIN SPERLING BENNETT
      DE JONG DRISCOLL PC
    25 West Middle Lane
    Rockville, Maryland 20850
    Tel: (301) 838-3314
    Fax: (301) 354-8314
    thyland@steinsperling.com