IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| BUNKERS INTERNATIONAL CORPORATION<br><br>　　Plaintiff,<br><br>v.<br><br>CARREIRA PITTI, P.C.<br><br>　　Defendant, *et al.* | Case No. 1:11-cv-00803-LMB -IDD |

**BUNKERS INTERNATIONAL'S RESPONSE
OPPOSING TLDS' MOTION FOR SUMMARY JUDGMENT**

**I.　INTRODUCTION**

　　For the reasons set forth below, TLDS' motion for summary judgment should be denied, or alternatively, this Court should defer consideration of TLDS' motion to allow Bunkers International sufficient time to take discovery, which is ongoing at the present time.[1]

　　First, there are material facts in dispute – including the identity of the registrant of the domain name <carreirapitti.com> (hereinafter, the "Domain Name"). TLDS asserts that Cable Onda S.A. is the registrant, but Cable Onda S.A. denies being the registrant. Second, TLDS' legal arguments regarding the garnishability of a domain name are incorrect. TLDS' reliance on a Virginia Supreme Court case involving the garnishability of a domain name under Virginia's garnishment statutes is misplaced, and ignores federal statutes, federal case law, and prior admissions made by Network Solutions (of which TLDS is a subsidiary).

---

[1] On October 28, 2011, Bunkers International served Interrogatories and Requests for Production on TLDS. TLDS' answers and responses are not due until November 30, 2011, at which time Bunkers International may need additional discovery, including by taking the depositions of Carreira Pitti ind Cable Onda in Panama.

Third, as the accompanying declaration confirms, Bunkers International needs time to take discovery related to the disputed material facts before it can adequately "present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Therefore, TLDS' motion for summary judgment should be denied, or alternatively, this Court should defer consideration of TLDS' motion until such time as Bunkers International has taken discovery.

## II.  UNDISPUTED FACTS

TLDS' motion identifies fifteen (15) facts as undisputed, most of which Bunkers International confirms are undisputed. There are, however, at least three disputed material facts which preclude granting TLDS' motion for summary judgment.

Bunkers International submits that there is a material fact dispute as to the identity of the registrant of the Domain Name. TLDS states that

> The registrant of the domain name <carreirapitti.com> is Cable Onda S.A. TLDS's records reflect that Cable Onda S.A. first registered the domain name <carreirapitti.com> with TLDS on December 21, 2004 (the "Registration Date"), and the domain name has remained registered by Cable Onda S.A. at all times since that date. Sterling Decl. ¶ 10, Ex. B.

Brief at 3, ¶ 12. However, on August 10, 2011, TLDS – pursuant to the Process for Maritime Garnishment issued by this Court – emailed copies of the Verified Complaint, Request for Writ of Maritime Garnishment, Notice and Order Directing Clerk to Issue Process of Maritime Garnishment, Process of Maritime Garnishment, and Order for Appointment for Service of Writs of Maritime Garnishment to Cable Onda. Exhibit A. The next day, TLDS emailed the same documents to Francisco Carreira, stating that "It has been brought to our attention by Cable Onda the listed registrant in our systems for the domain name carreirapitti.com that they are in fact not the registrant of the domain name." Exhibit B. Cable Onda's denial creates a genuine material

fact issue as to who is the actual registrant of the Domain Name, including whether Carreira Pitti has any interest in the domain name.

Because the identity of the Domain Name's registrant is unclear, Bunkers International disputes TLDS' statement that

> Carreira Pitti, P.C. is not the registrant of the domain name <carreirapitti.com>, and at no time since the Registration Date has Carreira Pitti, P.C. been the registrant of <carreirapitti.com>. Sterling Decl. ¶ 11.

Brief at 3, ¶ 13. Cable Onda's denial brings into question whether TLDS' records, which form the basis of TLDS' assertion, are in fact accurate.

Finally, Bunkers International disputes TLDS' insistence that

> TLDS is not indebted to Carreira Pitti, P.C., nor does TLDS otherwise have in its possession, custody or control any tangible or intangible property belonging to Carreira Pitti, P.C. Sterling Decl. ¶ 13.

Brief at 3, ¶ 15. While TLDS may not be indebted to Carreira Pitti, there is a genuine material fact issue – as well as an issue of law – as to whether TLDS has in its possession, custody or control any of Carreira Pitti's property.

**III. ARGUMENT**

    A. <u>TLDS Holds Garnishable Property of Carreira Pitti</u>

TLDS first argues that it holds no garnishable property belonging to Carreira Pitti, because Cable Onda – not Carreira Pitti – is the registrant of the domain name and because a domain name is not garnishable.[2] TLDS' arguments are based on disputed material facts and incorrect application of case law.

---

[2] TLDS also argues that it does not store or host the files or content associated with the website located at <carreirapitti.com>, and therefore TLDS holds no garnishable property. Bunkers International does not seek to garnish Carreira Pitti's <u>website</u>, but rather its <u>domain name</u>.

- 3 -

Supplemental Rule B states only that the property sought to be attached must be "the defendant's tangible or intangible personal property" (Supp. Rule B(1)(a)).  It does not specify what type of interest or title (legal, equitable, possessory, ownership) a defendant must have in the property before the property is subject to garnishment under Supplemental Rule B.  TLDS suggests – incorrectly – that attachment under Supplemental Rule B is limited to property in which a defendant has "legal title" (Brief at 5), yet TLDS cannot point to any legal authority in support of this proposition and Supplemental Rule B contains no such language.

As set forth above, there is a genuine material fact issue regarding the identity of the Domain Name registrant.  TLDS insists – but Cable Onda denies – that Cable Onda is the registrant.  It is important to note that when TLDS was notified that Cable Onda denied being the registrant, TLDS then contacted Carreira Pitti (through Mr. Carreira), which at the very least creates a genuine issue of material fact regarding Carreira Pitti's interest in the domain name.  Exhibit B.  Why did TLDS immediately contact Carreira Pitti if it truly had no interest in the domain name?  Without the ability to take discovery and determine which entity is the domain name registrant, Bunkers International cannot develop its argument more fully.  Declaration of _, Exhibit _ hereto.

At least one federal court sitting in admiralty has declined to read TLDS' additional restrictions into Supplemental Rule B.  In *World Fuel Servs. v. SE Shipping Lines PTE, Ltd.*, 2011 U.S. Dist. LEXIS 14071 (E.D. La. Feb. 4, 2011), the Court denied defendant's motion to vacate plaintiff's Rule B attachment of defendant's property, finding that defendant's **possessory interest** in the attached property was enough to satisfy Supplemental Rule B's requirements.  On defendant's motion for reconsideration, the Court stated as follows:

> Defendant asserts that Rule B permits attachment of a defendant's property only when the defendant has full ownership of the property sought to be attached, and

> therefore urges that the Court made a manifest error of law in declining to vacate the attachment based on SESL's mere possessory interest in the property. Rule B(1)(a) provides that subject to the conditions enumerated in that section, "a verified complaint may contain a prayer for process to attach the defendant's tangible and intangible personal property – up to the amount sued for – in the hands of the garnishee named in the process." **Rule B does not identify the specific legal interest in the property that a defendant must have before it is subject to seizure.** In its prior ruling, the Court concluded that defendant had at least a right of possession, a legal interest, in the bunkers. Considering that legal interest in the bunkers, the Court concludes that its prior denial of the motion to vacate was not based on a manifest error of law. *See Aifos Trade, SA v. Midgulf International Ltd.*, 2006 U.S. Dist. LEXIS 97549 (S.D. N.Y. May 1, 2006).

*Id.* at *4–5 (emphasis added).

It is clear that Carreira Pitti has at least some interest in the Domain Name – for starters, they share the same name. When the Domain Name is accessed on the Internet (www.carreirapitti.com), the user is directed to the website of Carreira Pitti. Exhibit D. Even if Cable Onda is the Domain Name's registrant, as TLDS alleges, it is clear that there is some relationship between Cable Onda and Carreira Pitti through which Carreira Pitti has some interest (such as possession and/or use) in the Domain Name – which is all that the language of Supplemental Rule B requires.

      B.      <u>A Domain Name May Be Garnished and Attached Under Federal Law</u>

TLDS next argues that a domain name cannot be garnished or attached, relying primarily on *Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80 (2000). TLDS' argument fails for three reasons.[3] First, a domain name is a type intellectual property, and intellectual property is a type of intangible property. Second, *Umbro* is not applicable to the case

---

[3] Although lacking the force of law, it is worth noting that during oral argument in *Umbro*, Network Solutions admitted "that the right to use a domain name is a form of intangible personal property." 529 S.E.2d at 86; *see also Network Solutions, Inc. v. Clue Computing, Inc.*, 946 F. Supp. 858, 860 (D. Colo. 1996). The plain and unambiguous language of Rule B permits garnishment of any "tangible or intangible property" belonging to the defendant. It is therefore difficult to understand how TLDS (a subsidiary of Network Solutions) can argue that a domain name cannot be garnished under Rule B.

at bar because the *Umbro* court considered only whether a domain name could be the subject of a state garnishment proceeding brought under Virginia's garnishment statutes. Third, Congress intended to treat domain names as intangible property, and intangible property can be garnished under Supplemental Rule B.

        1.    *Domains Names are Intangible, Intellectual Property*

A domain name is a type of intellectual property. *See Advertise.com, Inc. v. AOL Adver., Inc.*, 616 F.3d 974, 980 (9th Cir. 2010) ("granting trademark rights over a domain name composed of a generic term and a TLD grants the trademark holder rights over far more intellectual property than the domain name itself"); *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1189–90 (11th Cir. 2009) ("This appeal arises out of an intellectual property dispute … regarding the ownership and use of two Internet domain names."); Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(B)(i) ("the trademark or other intellectual property rights of the person, if any, in the domain name"); *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 778 (8th Cir. 2004) (noting that the legislative history of the ACPA is concerned with the protection of intellectual property rights in domain names).[4]

Intellectual property is a type of intangible property. *See SI Restructuring, Inc. v. Faulkner (In re SI Restructuring, Inc.)*, 532 F.3d 355, 358 (5th Cir. 2008) ("loan was secured with the company's royalty streams from franchisees, the company's intellectual property rights, and other intangible property"); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1570 (Fed. Cir. 1994) ("intellectual property rights relate to intangible property"); *SAPC, Inc. v.*

---

[4] The Uniform Domain Name Dispute Resolution Policy ("UDRP"), which all domain name registrars must follow, provides a procedure for challenging the registration of a domain name by filing a complaint with the World **Intellectual Property** Organization. *See Southern Co. v. Dauben Inc.*, 324 Fed. Appx. 309, 311 (5th Cir. 2009); *Mailplanet.com, Inc. v. Lo Monaco Hogar, S.L.*, 291 Fed. Appx. 229, 230 (11th Cir. 2008).

*Lotus Dev. Corp.*, 921 F.2d 360, 363 (1st Cir. 1990) ("Lotus acquired all SAPC's intangible property relating to any of its copyrights and computer programs, including all rights relating to trade secrets or other intellectual property").

Because a domain name is a type of intellectual property and intangible property, and because the text of Supplemental Rule B permits the garnishment and attached of any "tangible of intangible property" belonging to a defendant, a domain name can be garnished under Supplemental Rule B.

### 2. *Umbro* is Inapposite and Factually Distinguishable

Because a domain name is intangible property, and intangible property is subject to attachment under Supplemental Rule B, there is no need for this Court to consider state law. Yet even consideration of state law does not produce the result TLDS urges because the Supreme Court of Virginia's decision in *Umbro* is completely inapposite to the facts of the case at bar. The *Umbro* court completely sidestepped the question of whether a domain name registration is a type of intellectual property (it is), which, as explained above, squarely confirms that a domain name can be garnished under Supplemental Rule B.

Further, the *Umbro* court did not "tackle[] head-on whether a domain name registration may be the subject of a garnishment proceeding," as TLDS argues. Brief at 8. Rather, the *Umbro* court considered whether a domain name is a "liability" under Virginia's garnishment statutes that could be garnished by a post-judgment creditor. In a nuanced holding confined to the facts of the case before it, and applying statutory text completely different from that of Supplemental Rule B, the court concluded only that

> "a domain name registration is the product of a contract for services between the registrar and registrant." *Dorer*, 60 F. Supp. 2d at 561. A contract for services is not "a liability" as that term is used in *§ 8.01-511* and hence is not subject to garnishment.

*Umbro*, 259 Va. at 770, 529 S.E.2d at 86.

> *Umbro* is often cited for the proposition that a domain name is simply a contractual arrangement and therefore cannot be a property right. This assertion is a misreading of the case. The Virginia Supreme Court purposely did not consider whether a domain name should be considered a type of property. Rather, it declared that a domain name contract was not a "liability" under the [Virginia] garnishment statute.

Daniel Hancock, *You Can Have It, But Can You Hold It?: Treating Domain Names as Tangible Property*, 99 Kentucky L. J. 185, 192–93 (2010–11).

The Ninth Circuit further dissected the *Umbro* decision as follows:

> Laxton argues that a garnishment case from the Supreme Court of Virginia, *Network Solutions, Inc. v. Umbro International, Inc.* ("Umbro"), 259 Va. 759, 529 S.E.2d 80 (Va. 2000), holds that domain names are contract rights under Virginia law. **We find the case more equivocal**. *Umbro* did treat domain names as contract rights, but at the same time, the opinion observed that the registrar of the name, Network Solutions, took the position that the name was "personal property." *Id.* at 85-86. The court stated that it did "not believe that it is essential to the outcome of this case to decide whether the circuit court correctly characterized a domain name as a 'form of intellectual property.'" *Id.* at 86. The court, thus, did not disapprove of the characterization of domain names as property rights, but treated it as immaterial to the garnishment determination. *See id.* at 86-87; *see also* George Vona, Comment, *Sex in the Courts*: Kremen v. Cohen *and the Emergence of Property Rights in Domain Names*, 19 Intell. Prop. J. 393, 408 (2006) ("*Umbro* does not stand for the proposition that domain names are not intangible property. In fact, the decision is quite ambiguous.").
>
> ***Umbro* tells us only about how Virginia law treats domain names in garnishment actions.** Particularly given the majority of states' justifiable coalescence around understanding domain names as intangible property, we decline Laxton's invitation to read *Umbro* more broadly than its text requires.

*CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142-1143 (9th Cir. 2010) (emphasis added).

The *Umbro* court's use of – and TLDS' reliance on – *Dorer v. Arel*, 60 F. Supp. 2d 558 (E.D. Va. 1999) is misplaced.

> The *Umbro* court misinterpreted *Dorer*, citing it for the proposition that "a domain name registration is the product of a contract for services between the registrar and registrant" but ignoring the fact that the *Dorer* court acknowledged

- 8 -

> that some domain names exist even without attached goodwill, and that they are attractive and appropriate targets for judgment creditors seeking to satisfy a judgment from a debtor. Moreover, the *Dorer* court left undecided the question of whether domain names are property or merely contract rights. Thus, the Supreme Court of Virginia's reliance on the *Dorer* decision was misplaced, and its holding in *Network Solutions Inc. v. Umbro* was without precedent.

Zeltser, Vita, *The Specter of the Debt Collector and the Unchartered Domain: The Case for Treating Domain Names as Garnishable Property*, 12 Digest 59, 68 (2004) (footnotes omitted).

In a case following *Umbro*, the Ninth Circuit held that the right to use a domain name **is** a form of property and could be the subject of a conversion action under California law. *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003).

> The preliminary question, then, is whether registrants have property rights in their domain names. Network Solutions all but concedes that they do. This is no surprise, given its positions in prior litigation. *See Network Solutions, Inc. v. Umbro Int'l, Inc.*, 259 Va. 759, 529 S.E.2d 80, 86 (Va. 2000) ("[Network Solutions] acknowledged during oral argument before this Court that the right to use a domain name is a form of intangible personal property."); *Network Solutions, Inc. v. Clue Computing, Inc.*, 946 F. Supp. 858, 860 (D. Colo. 1996) (same). The district court agreed with the parties on this issue, as do we.
>
> Property is a broad concept that includes "every intangible benefit and prerogative susceptible of possession or disposition." *Downing v. Mun. Court*, 88 Cal. App. 2d 345, 350, 198 P.2d 923 (1948) (internal quotation marks omitted). We apply a three-part test to determine whether a property right exists: "First, there must be an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity." *G.S. Rasmussen*, 958 F.2d at 903 (footnote omitted). Domain names satisfy each criterion. Like a share of corporate stock or a plot of land, a domain name is a well-defined interest. Someone who registers a domain name decides where on the Internet those who invoke that particular name -- whether by typing it into their web browsers, by following a hyperlink, or by other means -- are sent. Ownership is exclusive in that the registrant alone makes that decision. Moreover, like other forms of property, domain names are valued, bought and sold, often for millions of dollars, *see* Greg Johnson, *The Costly Game for Net Names*, L.A. Times, Apr. 10, 2000, at A1, and they are now even subject to in rem jurisdiction, see 15 U.S.C. § 1125(d)(2).

*Id.* at 1029–30.

*Umbro* does not apply here. The court considered the text of a state garnishment statute which bears no similarity to Supplemental Rule B's broad reach, misinterpreted prior jurisprudence, and reached a conclusion that later courts have rejected.

        3.    *Congressional Intent Confirms that Domain Names are Property*

The Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), creates an *in rem* cause of action **against a domain name** to prevent cybersquatters from registering domain names with no intention of using them. Under the ACPA, a court may order "the forfeiture or cancellation of the domain name **or the transfer of the domain name** to the owner of the mark." § 1125(d)(2)(D)(1).[5]

> the ACPA also defines domains as property for the purpose of permitting plaintiffs to sue *in rem* defendants who cannot be found or over whom the court cannot exercise personal jurisdiction.

Mellyn, Jack, Note, *"Reach Out and Touch Someone": The Growing Use of Domain Name Seizure as a Vehicle for the Extraterritorial Enforcement of U.S. Law*, 42 GEO. J. INT'L L. 1241, 1249. These are the very same reasons behind a garnishment action under Supplemental Rule B.

This Court need not look to Virginia law because the clear language of Supplemental Rule B, federal case law, and federal law provide the answer – any property of a defendant may be garnished, and a domain name is a type of property.

**IV. CONCLUSION**

TLDS' motion for summary judgment should be denied. There are genuine issues of material fact, the legal theories on which TLDS' motion rely are incorrect, and – as the

---

[5] This provision of the ACPA also undercuts TLDS' argument that allowing garnishment of a domain name would impermissibly force TLDS to contract with Bunkers International and would violate the non-assignable/non-transferrable provisions of TLDS' Service Agreement. Congress clearly provided a mechanism through which a domain name can, by federal court order, be assigned and/or transferred to another party, notwithstanding any contractual terms to the contrary.

accompanying affidavit confirms – there are facts unavailable to Bunkers International which preclude it from "presenting facts essential to justify its opposition." Alternatively, Bunkers International requests that this Court defer consideration of TLDS' motion until discovery has been completed.

Dated: November 9, 2011.

Respectfully Submitted,

| | |
|---|---|
| /s/ Timothy P. Bosson | /s/ Marios J. Monopolis |
| Timothy P. Bosson (VSB No. 72746) | Marios J. Monopolis, *pro hac vice* |
| Simms Showers LLP | Simms Showers LLP |
| 305 Harrison Street SE, Third Floor | 20 South Charles Street, Suite 702 |
| Leesburg, VA 20175 | Baltimore, MD 21201 |
| (703) 771-4671 | (410) 783-5795 |
| (703) 771-4681 –facsimile– | (410) 510-1789 –facsimile– |

Counsel for Plaintiff Bunkers International

## CERTIFICATE OF SERVICE

I hereby certify that on November 9, 2011, I caused the foregoing to be filed on the Court's CM/ECF system for service on all counsel of record.

/s/ Timothy P. Bosson