## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| BUNKERS INTERNATIONAL CORPORATION, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 1:11cv803  LMB/IDD |
| | ) |
| CARREIRA PITTI, P.C., | ) |
| | ) |
| Defendant, | ) |
| | ) |
| -and- | ) |
| | ) |
| TLDS, LLC, | ) |
| | ) |
| Garnishee. | ) |

## REPLY BRIEF IN SUPPORT OF
## GARNISHEE'S MOTION FOR SUMMARY JUDGMENT

TLDS, L.L.C. ("TLDS") has been dragged into this dispute between the plaintiff,

Bunkers International Corporation ("Bunkers"), and the defendant, Carreira Pitti, P.C.,

("Carreira Pitti"), a Panamanian law firm.  TLDS is a domain name registrar.  Bunkers is

attempting to use maritime attachment procedures to garnish a domain name for which

TLDS is the registrar.  In TLDS's Motion for Summary Judgment, it established that (a)

Carreira Pitti is not the registrant of the domain name <carreirapitti.com>, and (b) in any

event, domain names are not garnishable.

In its late-filed opposition,[1] Bunkers does not establish the existence of a material

disputed fact, nor can it overcome the rule that domain names simply are not garnishable.

---

[1]     Pursuant to Local Rule 7(F)(1), Bunkers' opposition to the Motion for Summary Judgment was due no later than November 8, 2011, even after factoring in the 3 additional days provided by Fed. R. Civ. P. 6(d).  For this reason alone, Bunkers' opposition ought to be stricken and disregarded.

2250553_2

I.     **There is no factual dispute as to the identity of the registrant of the domain name <carreirapitti.com>.**

Bunkers first takes the position that Cable Onda S.A. ("Cable Onda") is not the registrant of the domain name <carreirapitti.com>.  Its position is based upon an unsworn statement by an unnamed representative of Cable Onda S.A. who denied that it was the registrant.  Bunkers contends "Cable Onda's denial creates a genuine issue as to who is the actual registrant of the Domain Name, including whether Carreira Pitti has any interest in the domain name."  Opp. at 2-3.

Cable Onda's unsworn, hearsay denial, from an unnamed person and contained in an email, does not and cannot establish a disputed fact.  "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."  Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) (citations omitted); Campbell v. Verizon Va., Inc., ___ F. Supp. 2d ___, 2011 WL 4073143, *1 (E.D. Va., Sept. 13, 2011).  "For documents to be considered, they 'must be authenticated by and attached to an affidavit' that meets the strictures of Rule 56."  Campbell, at *1 (quoting Orsi, 999 F.2d at 92).  See also Global Policy Partners, LLC v. Yessin, 686 F. Supp. 2d 642, 649 (E.D. Va. 2010) (same).

Here, there has been no attempt to authenticate the emails or to establish the veracity of the unnamed representative of Cable Onda.  Nor could there be.  The email is facially inaccurate.  TLDS is the registrar of the domain name <carreirapitti.com>.  Its records conclusively establish the identity of the registrant of any domain name registered with it.  TLDS's records reflect that Cable Onda is the registrant of <carreirapitti.com>.  See Sterling Decl. ¶ 10, Ex. B.  Moreover, the identity of a registrant of a domain name is established by looking to the WHOIS records, which are publicly accessible.  See, e.g.,

Faction Ltd. v. Gstaronsale.com, 2011 WL 677107 (E.D. Va., Feb. 17, 2011) (recognizing that the registrant of a domain name is the person identified in the WHOIS database); Volkswagen AG v. Volkswagentalk.com, 584 F. Supp. 2d 879, 881 (E.D. Va. 2008) ("the WhoIs database . . . displays the registered names and addresses of domain name owners.").[2]   The WHOIS database, consistent with TLDS's records, reflects that the registrant of the domain name <carreirapitti.com> is Cable Onda.  See Declaration of Timothy Hyland, ¶ 5, Ex. A, attached hereto.   Indeed, payment to TLDS for the registration services also was made by Cable Onda, not Carreira Pitti.  See Second Declaration of Natalie Sterling, ¶ 4, attached hereto.

Accordingly, there is and can be no genuine dispute of fact as to the identity of the registrant of <carreirapitti.com>.

II.   **There is no factual dispute that TLDS does not have in its possession, custody or control any of Carreira Pitti's property.**

Bunkers next asserts that "there is a genuine material fact issue . . . as to whether TLDS has in its possession, custody or control any of Carreira Pitti's property."  Opp. at 3.  Carreira Pitti offers no evidence, by affidavit or otherwise, to support its position.

"[T]he party opposing summary judgment may not rest on mere allegations or inferences, but must instead proffer specific facts or objective evidence showing that a genuine issue of material fact exists requiring further proceedings."  Callaway Golf v. Kappos, ___ F. Supp. 2d ___, 2011 WL 3206880, *4 (E.D. Va., July 27, 2011) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Bunkers offers no specific facts or objective evidence identifying any property of Carreira Pitti in

---

[2]   The Court's use of the term "owners" was imprecise.  Clearly, the Court intended to refer to "registrants."

2250553_2

TLDS's possession.  The only "thing" it refers to is the domain name registered by Cable Onda.[3]

III.     **TLDS does not hold garnishable property of Carreira Pitti.**

Assuming – incorrectly – that Carreira Pitti is the registrant of <carreirapitti.com>, the domain name still cannot be garnished.  Bunkers first cites to World Fuel Svcs., Inc. v. SE Shipping Lines Pte., Ltd., 2011 WL 446653 (E.D. La., Feb. 4, 2011) for the proposition that a possessory interest in property by the defendant is sufficient to justify exercise of a maritime seizure and attachment of the property. Bunkers misses the mark, as it fails to identify any "possessory interest" of Carreira Pitti in the domain name.  Indeed, it is difficult to imagine how one could have a possessory interest in a domain name registration.  This Court has recognized this very conundrum:

> As a practical matter, it is difficult to see in the case of a domain name precisely what the executing official would seize—or what steps an executing official would take to compel the registering authority . . . to cancel a domain name or to transfer one from one party to another.  By contrast, in the case of intangible personal property such as stock, the executing official could seize the actual certificate if it were in the possession or control of the judgment debtor, or garnish the third-party account in which it is held, and then dispose of the property by judicial sale.

Dorer v. Arel, 60 F. Supp. 2d 558, 559 n.8 (E.D. Va. 1999).

Bunkers then embarks in a series of speculative contemplations.  First, it states "it is clear that Carreira Pitti has at least some interest in the domain name – for starters, they share the same name."  Opp. at 5.  By this reasoning, of course, the registrant of the

---

[3]   In its Opposition, at page 3, n.2, Bunkers concedes that it is not seeking a garnishment of Carreira Pitti's website.  This contradicts the express allegations in Bunkers' Complaint.  See Complaint (Dkt. No. 1) ¶ 19.

domain name <cupcakes.com> would be subject to a garnishment against a company called Cupcakes, Inc., even if they were entirely unrelated.

Next, Bunkers states (again without any evidentiary support) that the domain name <carreirapitti.com> directs to Carreira Pitti's website. Opp. at 5. While interesting, this is irrelevant to the issue of who has rights, if any, in the domain name registration. And more to the point, it is inaccurate. As of November 13, 2011, the domain name <carreirapitti.com> directs to a page whose only substance is a link to Cable Onda's website. See Declaration of Timothy Hyland, ¶ 6, Ex. B. Carreira Pitti appears to have its website accessible from <panamalaw.com>, which is not registered with TLDS. See Declaration of Timothy Hyland, ¶¶ 7-8, Ex. C, D.

Last, Bunkers speculates that there "must be a relationship between Cable Onda and Carreira Pitti through which Carreira Pitti has some interest . . . in the Domain Name . . . ." Maybe. But if this is so, Bunkers has named the wrong garnishee, as it would be Cable Onda that has "possession, custody or control" of Carreira Pitti's "property." By way of analogy, a law firm may have a trust account at Bank of America. In that account, the law firm holds funds for client Smith. Smith's judgment creditor cannot reach those funds by issuing a garnishment to Bank of America, as Bank of America's debt is to its customer, the law firm. The proper garnishee in such a situation is the law firm. In this example, it is the law firm that has possession, custody or control of the Smith's asset, not Bank of America. This is the fundamental flaw in Bunkers' reasoning. Assuming, *arguendo*, that it has the ability to garnish or attach the domain name registration for <carreirapitti.com> at all, it has named the wrong garnishee. TLDS has

no relationship whatsoever with Carreira Pitti, and has no basis for transferring Cable Onda's domain name registration to Bunkers.  Only Cable Onda can do so.

IV.      **A domain name registration may not be garnished or attached.**

Bunkers next argues that "[a] domain name is a type of intellectual property," that "intellectual property is a type of intangible property, and, therefore, because "intangible property is subject to attachment under Supplemental Rule B," a domain name must be attachable.  Opp. at 6-7.  Bunkers' argument is overly simplistic and is fundamentally flawed.

Every authority relied upon by Bunkers for the proposition that a domain name is "intellectual property" involves trademark law.  That is, every case Bunkers cites, together with the Anticybersquatting Consumer Protection Act, which it also cites, deals with claims that a domain name infringes a trademark.  Without question, a trademark is a form of intellectual property.  See, e.g., Last Best Beef, LLC v. Dudas, 455 F. Supp. 496, 501-02 (E.D. Va. 2006) ("For businesses, trademarks are one of the most valuable forms of intellectual property") (quoting *Business.gov: The Official Business Link to the United States Government, Plain English Guide to Trademarks*), rev'd on other grounds, 506 F.3d 333 (4th Cir. 2007).  However, Bunkers' argument to the contrary notwithstanding, a trademark cannot be attached or garnished.  This is so because trademarks "are not assets that can be freely traded apart from the goodwill to which they are attached."  Dorer, 60 F. Supp. 2d at 561.  Accordingly, for this reason "a judgment creditor may not levy upon and sell a judgment debtor's registered service mark or trademark."  30 Am. Jur. 2d Executions & Enforcement of Judgments § 160 (1994).  Accordingly, Bunkers' argument that a domain name registration – which at most might

comprise a trademark – is therefore intangible property subject to attachment, is simply wrong.

V.     ***Umbro* is dispositive.**

Bunkers' next argument is a lengthy attempt to distinguish Network Solutions, Inc. v. Umbro Int'l, Inc., 259 Va. 759, 529 S.E.2d 80 (2000), by citing to law review articles and California cases critical of the decision.  However, Umbro remains good law in Virginia and unequivocally holds that because a domain name does not exist separate from the service that created it – the registrar's services – it cannot be the subject of a garnishment.  Id. at 772, 529 S.E.2d at 87.  Bunkers does not, and cannot, contest that the Court must look to state law in determining whether a particular item is subject to maritime attachment.  See Shipping Corp of India Ltd. v. Jaldhi Overseas Pte. Ltd., 585 F.3d 58, 70 (2d Cir. 2009);  Reibor Int'l Ltd. v. Cargo Carriers Ltd., 759 F.2d 262, 266 (2d Cir. 1985);  Scanscot Shipping Svcs. GMBH v. Metales Tracomex Ltda., 617 F.3d 679, 681 (2d Cir. 2010).  Virginia law says a domain name is not subject to garnishment.

In any event, Bunkers' reliance on two California law cases – CRS Recovery, Inc. v. Laxton, 600 F.3d 1138 (9th Cir. 2010)[4] and Kremen v. Cohen, 337 F.3d 1024 (9th Cir. 2003) – is misplaced.  In both cases, the Ninth Circuit interpreted what it believed to be the law that ultimately would be adopted by the state courts in California with respect to whether a domain name may be the subject of a conversion action.  This is not the issue

---

[4]     Bunkers makes much of the statement in Laxton to the effect that Network Solutions, Inc. took the position in Umbro that domain names are "personal property." Laxton misquotes and misunderstands Umbro.  Network Solutions took no such position. In Umbro, Network Solutions conceded only that "the right to use a domain name is a form of intangible personal property."  259 Va. at 769, 529 S.E.2d at 86 (underscoring added).  The right to use a domain name, to the exclusion of all others, is akin to a trademark at most, and, as held in Umbro, is solely a contract right.

confronting the Court here.  In fact, California state courts, consistent with <u>Umbro</u>, have held that domain names cannot be the subject of a writ of execution or court-ordered turnover of a domain name registration.  See <u>Palacio del Mar Homeowners Ass'n v. McMahon</u>, 174 Cal. App. 4th 1386, 95 Cal. Rptr. 445 (2009).[5]  Bunkers clearly disagrees with <u>Umbro</u>, as have some California courts and commentators.  But <u>Umbro</u> is binding law in Virginia, where Bunkers, a Florida corporation, elected to sue Carreira Pitti, a Panamanian corporation.  Bunkers chose its forum, for better or worse, and is bound by its law.

VI.     **Congress never has determined that domain names are property.**

Lastly, Bunkers again cites to a law review article to contend that in enacting the Anticybersquatting Consumer Protection Act ("ACPA"), Congresss determined that domain names are property.  Bunkers cites not a single provision of the ACPA for this proposition, because it appears nowhere in the text of the ACPA.

The ACPA simply provides a mechanism for in rem jurisdiction in certain trademark infringement cases involving domain name registrations.  "In rem actions only require that a party seeking an interest in a *res* bring the *res* into the custody of the court and provide reasonable, public notice of its intention to enable others to appear in the action to claim an interest in the res."  <u>R.M.S. Titanic, Inc. v. Haver</u>, 171 F.3d 943, 957 (4th Cir. 1999).

A *res* can come in many shapes and sizes and, in some cases, it has no shape or size at all.  For instance, in Virginia, a divorce suit in which the pleadings seek only to terminate a marriage is an in rem proceeding.  <u>Roberge v. Roberge</u>, 188 B.R. 366, 367

---

[5]  Indeed, the Ninth Circuit recognized in <u>Laxton</u> that while under California law domain names may be the subject of conversion actions, they are not subject to garnishment or execution.  600 F.3d at 1143.

2250553_2

(Bankr. E.D. Va. 1995); <u>Reid v. Reid</u>, 12 Va. App. 1218, 1227, 409 S.E.2d 155, 160 (1991).  "Jurisdiction in a divorce suit is purely statutory, and does not encompass broad equitable powers not conferred by statute."  <u>Boyd v. Boyd</u>, 2 Va. App. 16, 19, 340 S.E.2d 578, 580 (1986) (citations omitted); <u>see</u> <u>also</u> Michie's Jurisprudence, <u>Divorce & Alimony</u> § 35.  In essence, the status of marriage is an intangible *res*.  <u>Atchley v. Atchley</u>, 585 S.W.2d 614, 619 (Tenn. App. 1978).  "If domicile exists in a state, jurisdiction to affect the status of marriage exists in that state, regardless of whether the status does or does not fit into the classic concept of a 'res.'"  <u>Id.</u>;  <u>see</u> <u>also</u> <u>Williams v. North Carolina</u>, 317 U.S. 287, 297-99 (1942).  Even a will has been considered a *res* and when the will was voluntarily brought into the courts of Florida to be construed, a trust created under the will "is to all intents and purposes brought with it."  <u>Henderson v. Usher</u>, 118 Fla. 688, 692, 160 So. 9, 10 (1935).

With its enactment of the ACPA, Congress declared that a domain name can, under certain circumstances, be a *res*, the situs of which provides a basis for in rem jurisdiction.  That does not mean that a domain name is property, much less attachable property.  The ACPA provides only that a domain name – like a divorce or a will – can be a *res*.  Nothing more.

## VI.    Conclusion.

For the reasons set forth in TLDS's opening brief and herein, TLDS's motion for summary judgment should be granted.

9

                                                            /s/
                                     _____

Timothy B. Hyland
Virginia State Bar No. 31163
Attorney for TLDS, L.L.C.
STEIN SPERLING BENNETT
  DE JONG DRISCOLL PC
25 West Middle Lane
Rockville, Maryland  20850
Tel: (301) 838-3314
Fax: (301) 354-8314
thyland@steinsperling.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 14th day of November, 2011, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, and that service will thereby be accomplished on:

> Timothy P. Bosson, Esquire
> Simms Showers LLP
> 305 Harrison Street, S.E.
> Leesburg, Virginia  20175
>
> *Counsel for Bunkers International Corporation*

And I hereby certify that on the 14th day of November, 2011, I will email and mail a copy of the document and a copy of the NEF by U.S. mail to the following non-filing user:

> Carreira Pitti, P.C.
> 55 St. No. 255 Carpit Buildings, El Cangrejo
> P.O. Box 0819-0068 El Dorado
> Panama, Republic of Panama
> info@carreirapitti.com
>
> *Defendant*

_____/s/_____
Timothy B. Hyland
Virginia State Bar No. 31163
Attorney for TLDS, L.L.C.
STEIN SPERLING BENNETT
  DE JONG DRISCOLL PC
25 West Middle Lane
Rockville, Maryland  20850
Tel: (301) 838-3314
Fax: (301) 354-8314
thyland@steinsperling.com

2250553_2